UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SVI, INC. dba SPECIALTY VEHICLES,

    Plaintiff,

v.

DAVID G. SMITH, *et al.*,

    Defendants.

Case No. 2:07-cv-1447-LDG (PAL)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    The parties, plaintiff SVI, INC., dba SPECIALTY VEHICLES (SVI) and defendant DAVID G. SMITH tried the issue of damages to the Court on June 14, 2010. After considering the evidence and the testimony of the witnesses, as well as the arguments of the parties, the Court enters the following findings of fact and conclusions of law.

    Smith was an administrative assistant to Nancy Munoz, a sales manager at SVI (formerly Specialty Vehicle[1]), until he was terminated for cause on February 6, 2003. After his termination, Smith began full-time employment with Bus Services Corporation, dba

---

[1] Specialty Vehicles is the dba of SVI, Inc., which purchased all of Specialty Vehicle Inc.'s assets on November 30, 2004. Specialty Vehicle Inc. assigned all of its assets to SVI Inc. on that date.

Trams International in June, 2003. Trams International competes with SVI in the area of tram sales. After his termination, Smith gained access into SVI's general email account, svi1@ix.netcom.com. Smith accessed svi1@ix.netcom.com on a regular basis from the time of his termination in February, 2003, until he was served with the summons and complaint in the present action, in 2007.

By improperly accessing svi1@ix.netcom.com, Smith accessed new business leads coming to SVI, as well as all general business conducted by SVI via email correspondence, including both incoming and outgoing email messages. Smith had access to correspondence of SVI relating to the following third parties: Singapore Zoo, Baltimore Zoo, LA Hyperion, Havensight Mall, North Carolina Zoo, Miami Dade County-Candon Park, Shuttleport, California State University - Northridge, Ichetucknee Springs State Park, and Houston Livestock Show. SVI had a business relationship with all of the above named customers and actively bid on projects during the time of Smith's improper access to the svi1@ix.netcom.com email account.

Through his access to svi1@ix.netcom.com and his prior employment, Smith gained proprietary and confidential information, such as bid information, customer lists, and SVI's costs. Smith's new employer, Trams International, was able to solicit the customers and supply them with competing quotes based on the confidential information Smith gained through his previous employment with SVI and by improperly accessing the svi1@ix.netcom.com email account.

The Court previously granted summary judgment in favor of SVI on the issue of Smith's liability for all claims, with the issue of damages left to be heard at trial on June 14, 2010.[2]

---

[2] At trial, Smith abruptly claimed that the signature on the employment agreement produced by SVI was not authentic. Even if the court found that the employment agreement did not bear his signature, Smith later testified that he was aware of SVI's confidentiality policy. Furthermore, the authenticity of Smith's signature on the employment

"Causation consists of two components: actual cause and proximate cause." *Goodrich & Pennington Mortgage Fund, Inc. v. J.R. Woolard, Inc.*, 120 Nev. 777, 784; 101 P.3d 792, 797 (2004). To determine actual cause, the plaintiff must show that "but for" the action, the plaintiff's damages would not have occurred. *Id*. Proximate cause is "any cause which in natural [foreseeable] and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred." *Id*. The court finds that Smith caused damages to SVI which are described particularly below.

With regard to the North Carolina Zoo bid, an "approved equals" document originating from SVI was found in the possession of an employee at Trams International, despite the fact that the document was confidential and was submitted only to the North Carolina Zoo. Because of Smith's access to SVI's confidential bid information and "approved equals" information, Trams International was able to underbid SVI and was awarded the contract to the North Carolina Zoo. As a result of losing the North Carolina Zoo bid because of Smith's actions, SVI was damaged in the amount of $98,796 in lost profits.

With regard to the Singapore Zoo bid, Smith intercepted email correspondence between SVI and a representative from the Singapore Zoo. Smith contacted the Singapore Zoo on behalf of Trams International, and SVI consequently lost the contract for the Singapore Zoo when it was underbid by Trams International. As a result of losing the Singapore Zoo bid because of Smith's actions, SVI was damaged in the amount of $124,379 in lost profits.

With regard to the Havensight Mall bid, Smith had contact with a representative from Havensight Mall during his employment with SVI. After his termination, and with knowledge

---

agreement relates only to his liability, which was previously established. The outcome of the trial is therefore not affected by Smith's untimely objection.

of SVI's bid amount, Smith contacted the Havensight Mall on behalf of Trams International. Trams International was able to underbid SVI, and was subsequently awarded the contract for the Havensight Mall.  As a result of losing the Havensight Mall bid because of Smith's actions, SVI was damaged in the amount of $28,800 in lost profits.

With regard to the Baltimore Zoo bid, SVI used their general email account to correspond with zoo representatives, both before and after Smith's termination.  Despite the work done by SVI on the Baltimore Zoo project, the contract was ultimately awarded to Trams International when it underbid SVI.  As a result of losing the Baltimore Zoo project because of Smith's actions, SVI was damaged in the amount of $170,970 in lost profits.

With regard to the LA Hyperion bid, Smith was working on a bid for the project during his employment with SVI.  After Smith's termination from SVI and subsequent employment with Trams Interational, the LA Hyperion project went to public bid.  The contract was ultimately awarded to Trams International when it underbid SVI.  As a result of losing the LA Hyperion project because of Smith's actions, SVI was damaged in the amount of $19,635 in lost profits.

With regard to the Cal-State Northridge bid, Smith admitted knowing about SVI's bid amount on the project prior to his termination.  After Smith's termination, Cal-State Northridge ultimately awarded the contract to Trams International when it underbid SVI.  As a result of losing the Cal-State Northridge project because of Smith's actions, SVI was damaged in the amount of $51,434 in lost profits.

With regard to the Houston Livestock Show bid, Smith was working with a representative from the Houston Livestock Show on behalf of SVI during his employment. After Smith's termination, the Houston Livestock Show ultimately awarded the project contract to Trams International when they underbid SVI.  As a result of losing the Houston Livestock Show because of Smith's actions, SVI was damaged in the amount of $113,805 in lost profits.

With regard to the Shuttleport bid, SVI exchanged e-mails with representatives from Shuttleport regarding pricing, terms, and project specifications during Smith's employment with SVI. After Smith's termination, the Shuttleport project was ultimately awarded to Trams International when they underbid SVI. As a result of losing the Shuttleport project because of Smith's actions, SVI was damaged in the amount of $30,569 in lost profits.

With regard to the Ichetucknee Springs State Park bid, Smith was aware of SVI's bid amount on the project prior to his termination. After Smith's termination, the Ichetucknee Springs State Park contract was ultimately awarded to Trams International when they underbid SVI. As a result of losing the Ichetucknee Springs State Park project because of Smith's actions, SVI was damaged in the amount of $67,110 in lost profits.

With regard to the Miami Dade County bid, SVI was working with the manager and purchasing agent of Miami Dade on the project specifications. There was also evidence that Miami Dade was planning on using SVI as their sole source, rather than take the project to bid. However, the Miami Dade County contract was ultimately awarded to Trams International when the project went to bid and Trams International underbid SVI. As a result of losing the Miami Dade County bid because of Smith's actions, SVI was damaged in the amount of $10,331 in lost profits.

Smith also injured SVI by harming SVI's relationship with one of its main manufacturers, Severn-Lamb. Prior to Smith's interference, SVI was the exclusive distributor of Severn-Lamb products. On April 6, 2004, Smith forwarded an email to Mike Lamb, the owner of Severn-Lamb. The forwarded e-mail was a correspondence between SVI and the Singapore Zoo concerning another product that SVI sold. SVI was submitting a bid for both the Severn-Lamb product as well as an alternative product. By forwarding the correspondence, Smith caused significant damage to the relationship between SVI and one of its primary manufacturers, Severn-Lamb. As a result, Severn-Lamb distanced itself

1 professionally from SVI, and SVI was not able to make bids on projects with Severn-Lamb
2 products.

3       SVI incurred damages in promoting the Severn-Lamb product, which later became
4 fruitless because of Smith's actions.  Specifically, SVI incurred $20,342.89 in costs for
5 making brochures promoting Severn-Lamb products, and $20,960 in costs for presenting
6 Severn-Lamb products at trade shows.  SVI claims that it lost $650,000 in potential profits
7 because of its inability to readily make bids with Severn Lamb products.  However, the
8 damages sought because of potential future profits are too speculative to be accurately
9 determined based on the evidence presented at trial and must therefore be denied.

10       SVI also sought damages because of moving expenses incurred as a result of the
11 company's relocation to southern Nevada.  The testimony of Nancy Munoz indicated that
12 the sale of trams accounted for approximately half of SVI's total revenue.  It was only in the
13 area of tram sales that SVI was directly affected by Smith's actions.  In addition, Ms. Munoz
14 testified that SVI's relocation was mostly due to the lower cost of business expenses in
15 southern Nevada. Because there were other legitimate reasons for SVI's relocation from
16 California that are independent of Smith's actions, SVI's claim for damages related to
17 moving expenses is denied.

18       SVI has also claimed that it is entitled to punitive damages.  Punitive damages may
19 be awarded only if SVI can show by clear and convincing evidence that Smith is "guilty of
20 …malice, express or implied."  Nev. Rev. Stat. 42.005(1).  Malice is defined as "conduct
21 that is intended to injure a person or despicable conduct which is engaged in with a
22 conscious disregard of the rights of others."  *Clark v. Lubritz*, 113 Nev. 1089, 1098; 944
23 P.2d 861, 867 (1997).  Here, Smith testified that he acted out of "mischief" and has denied
24 that he used the information he intercepted to intentionally harm SVI.  Based on the
25 evidence, Smith's actions do not meet the standard for malice, and SVI's claim for punitive
26 damages must be denied.

1   Therefore, damages in the amount of $757,131.89 are awarded in favor of SVI, Inc.
2   and against Defendant, David G. Smith.

4   DATED this 24 day of March, 2011.

_____
Lloyd D. George
United States District Judge